**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>SURGE TRANSPORTATION INC.,<br><br>　　　　Debtor | Case No. 3:23-bk-1712<br>Chapter 11 |
| PHOENIX CAPITAL GROUP LLC, WEX Bank, INTEGRA FUNDING SOLUTIONS LLC, YANKTON FACTORING INC., ITHRIVE FINANCIAL LLC,<br><br>　　　　Plaintiffs,<br><br>VS.<br><br>SURGE TRANSPORTATION INC., AND TRIUMPH FINANCIAL SERVICES LLC, F/K/A ADVANCE BUSINESS CAPITAL LLC D/B/A TRIUMPH BUSINESS CAPITAL,<br><br>　　　　Defendants. | Adversary No.: |

**ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT,**
**RELATED RELIEF, AND DEMAND FOR JURY TRIAL**

Plaintiffs Phoenix Capital Group, LLC ("Phoenix), WEX Bank ("WEX"), Integra Funding Solutions, LLC ("Integra"), Yankton Factoring, Inc. ("Yankton"), IThrive Financial, LLC ("iThrive") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby bring this complaint (this "Complaint") against the debtor in the above captioned chapter 11 case, Surge

Transportation, Inc. ("Surge" or the "Debtor") and its financier, Triumph Financial Services, LLC f/k/a Advanced Business Capital LLC d/b/a/ Triumph Business Capital ("Triumph") (collectively, the "Defendants"), seeking a declaration that certain funds and accounts in the Defendants' possession do not constitute property of the bankruptcy estate under 11 U.S.C. §541(d) and applicable law, and should be returned to the Plaintiffs. In support, the Plaintiffs state as follows:

## NATURE OF THIS ACTION

1. Surge operates a freight brokerage through which it coordinates the transportation of freight for shipping customers (each a "Shipper" and collectively, "Shippers") using third-party motor carriers (as that term is defined in 49 U.S.C. §13102(3)) to physically transport the freight (each a "Carrier" and collectively, the "Carriers").

2. Surge's business practice has been to collect a single payment from each Shipper for each freight transportation shipment made under its direction (each a "Freight Charge"), and then forward to the respective Carriers the portion of that Freight Charge representing the agreed compensation for the Carrier's transportation services (each a "Carrier Fee").

3. Surge and its financier, Triumph, assert that all legal and equitable title to all Freight Charge payments belongs to Surge, including the portion allotted as the Carrier Fee.

4. In other words, the Defendants assert that both Surge's Commission as well as the Carrier Fee are both "property of the bankruptcy estate" and thus available satisfy certain pre and post-petition claims of Triumph.

5. The Plaintiffs are all factoring companies who, before this bankruptcy case was filed, purchased and took an assignment of certain Carriers' rights and claims to the payments made by the Shippers to Surge for their respective Carrier Fees.

6. The Plaintiffs bring this action to obtain a judgment (A) declaring that, pursuant to 11 U.S.C. 541(d) and applicable law, the Carrier Fee portion of Freight Charges is not property of Surge's bankruptcy estate, (B) that those amounts instead belong and should be paid to the respective Plaintiffs and are not subject to the liens and claims of the Debtor, its bankruptcy estate, Triumph or any other creditor of the Debtor, and (C) such further relief as is further necessary or proper based on the requested declaratory judgment.

## JURISDICTION AND VENUE

7. On July 24, 2023 (the "Petition Date"), Surge filed a voluntary petition under Title 11 of the United States Code § 101, et seq. (the "Bankruptcy Code") before the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court" or this "Court") commencing the above styled Chapter 11 Bankruptcy Case (the "Bankruptcy Case").

8. On August 29, 2023, this Court entered its *Final Order Approving Debtor-in-Possession Financing and Pre-Petition Factoring and Security Agreement with Triumph Financial Services, LLC* (Doc. No. 112) (the "DIP Order"). Among other things, the DIP Order authorizes and conditions Triumph's post-petition financing of the Debtor, while also prohibiting Carriers from exercising any collection rights against Shippers. In paragraph 20 of the DIP Order, this Court retained jurisdiction to enforce the DIP Order according to its terms. Further, Paragraph 24 of the DIP Order provides that all parties-in-interest have a right to object to certain alleged ownership and security interests in the Freight Charges by commencing a proceeding with the Bankruptcy Court on or before an "Objection Deadline," which is sixty days following the entry of the DIP

Order (i.e. October 28, 2023)[1]. This Complaint is timely filed as mandated by both the Interim Order and the DIP Order.

9. This matter primarily involves the rights and obligations among the Plaintiffs and the non-debtor Shippers relating to funds that Plaintiffs contend should be excluded from property of Surge's bankruptcy estate. As such, this is a non-core matter pursuant to 28 U.S.C. §§ 157(b) and (c).

10. The Bankruptcy Court has jurisdiction of this adversary proceeding pursuant to its prior in this Bankruptcy Case and, in turn, 28 U.S.C. §1334.

11. Venue is proper pursuant to 28 U.S.C. § 1409.

12. This adversary proceeding is commenced pursuant to Rules 7001(2), (7) and (9) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

13. Declaratory relief is appropriate pursuant to both Rule 7001 of the Bankruptcy Rules and 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").

14. As set forth below, an actual legal controversy exists with respect to the declaratory relief requested in this Complaint.

15. Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiffs do not consent to the entry of a final judgment or order with respect to this Complaint if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

---

[1] Notably, in Paragraph 24 of its July 27, 2023 *Interim Order Approving Debtor-in-Possession Financing and Pre-Petition Factoring and Security Agreement with Triumph Financial Services, LLC* (Doc. No. 40) (the "Interim Order"), this Court previously set a similar "Objection Deadline" sixty days after its entry (i.e. September 25, 2023).

## THE PARTIES

16. Plaintiff Phoenix is an Arizona limited liability company with its principal place of business in Arizona. Phoenix provides freight factoring services.

17. Plaintiff WEX is a Utah chartered industrial bank. WEX provides freight factoring services.

18. Plaintiff Yankton is a South Dakota Corporation with its principal place of business in South Dakota. Yankton provides freight factoring services.

19. Plaintiff iThrive is a Utah limited liability company with its principal place of business in Utah. iThrive provides freight factoring services.

20. Plaintiff Integra is a division of T Bank with its principal place of business in Texas. Integra provides freight factoring services.

21. Defendant Triumph is based in Texas but has availed itself to jurisdiction in Florida and of this Bankruptcy Court.

22. Defendant Surge is a Florida Corporation based in the state of Florida and is the debtor and debtor-in-possession in the Bankruptcy Case.

## BACKGROUND

### I. HOW THE DEBTOR OBTAINED POSSESSION OF THE PLAINTIFFS' CARRIER FEES

23. The Debtor, Surge, does not own a fleet of trucks, does not employ drivers, nor does it actually ship anything. Surge is, instead, an intermediary who arranges the transportation of its customers' goods in interstate commerce and is registered to perform those services as a freight broker (as that term is defined at 49 U.S.C. § 13102(2)) by the US Department of Transportation under Docket Number MC-518710 and US DOT number 223955.

24. Upon information and belief, when a customer wanted goods to be transported, those Shippers and Surge entered into one or more agreements governing their relationships (each a "Broker-Shipper Agreement").

25. Under a Broker-Shipper Agreement, a Shipper granted Surge the authority to select Carriers to transport the subject freight, and Surge served as an agent authorized by the Shippers to negotiate and arrange for transportation of their shipments in interstate commerce.

26. Surge also had arrangements with a large number of Carriers in order to have access to, and the use of, the personnel and equipment needed to physically transport the Shippers' freight when requested.

27. To that end, Surge would enter into an agreement with many of the Carriers using a contract known as a standardized Broker Carrier Agreement (each a "Broker-Carrier Agreement"). A representative example of a Broker-Carrier Agreement is attached to this Complaint as **EXHIBIT 1.**

28. The Broker-Carrier Agreements reflect the parties' intent and understanding that Surge would invoice its Shippers for both the Commission and Carrier Fee, and that Surge would immediately transmit payment of the Carrier Fee to the respective Carrier upon receipt of the same from the Shipper.

29. Once Surge selected a Carrier for a particular shipment, as required under federal law, *viz*. 49 U.S.C. §14706 and 49 C.F.R. Part 373 a bill of lading would issue for each shipment setting forth the Shipper, the Carrier, freight and other terms relevant to that particular shipment.

30. The Carriers then transported the subject freight and, upon delivery of each shipment, would submit to Surge the documentation necessary to permit Surge to invoice the Shipper for the

amount of the Carrier Fee, as was agreed to in the Broker-Carrier Agreement and related load confirmation.

31.     Surge earned its income by adding a mark-up or charging a commission on the Carrier Fee charges (the "Commission").

32.     Although the Carrier Fee and the Commission are separate and independent of each other, as provided in the Broker-Carrier Agreements (and as is common practice in the transportation industry), the parties agreed that Surge would issue a single invoice and collect from its Shipper customers a single payment for all Freight Charges, composed of both the Carrier Fee and the Commission that Surge charged.

33.     Upon information and belief, at all relevant times Surge and Triumph have tracked and known exactly the amount of the Carrier Fee associated with each Account[2] the Carriers earned for their transportation services (and which now belong to the Plaintiffs by their purchase and taking an assignment of the Carrier Fees, as explained below).

34.     Upon information and belief, at all relevant times Surge and Triumph have tracked and known exactly the amount of the Commission on each Account that Surge earned and is entitled to for its freight broker services (which belong to Surge).

35.     The Carriers and Surge intended and agreed that Surge would serve as the Carriers' collection agent for the Carrier Fees paid by the Shippers. This intent and agreement is evidenced by the express terms of the Broker-Carrier Agreements, wherein the Carriers granted Surge the exclusive right to handle, on their behalf, the billing and collection of the Carrier Fee from the

---

[2]     As used in this Complaint, and pursuant to the Uniform Commercial Code (the "UCC"), the term "Account" is defined to include "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, . . ." (UCC 9-102(2)).

Shippers and, as such, agreed to "refrain" from all collection efforts unless otherwise authorized by Surge in writing.

36. The agreement of Carriers to refrain from enforcing their billing and collection rights under applicable law was predicated on the Carriers' reasonable reliance on Surge's reciprocal agreement that it would (a) handle all billing of the Carrier Fee to the Shippers, and then (b) merely serve as a trusted intermediary, functioning as a mere conduit by transmitting the Carrier Fees to each respective Carrier immediately upon Surges' receipt of the same from each respective Shipper.

37. Nothing in the Broker-Carrier Agreement or otherwise granted Surge unfettered control of, or any other right to use, those Carrier Fees for its own purposes. Instead, the intent and express agreement of those parties contemplates that the Carrier Fees were to be delivered to and accepted to Surge only temporarily, and that "upon receipt" they were to be redelivered to the Carriers (or, here, the Plaintiffs as the assignees of the Carrier Fees).

38. Defendant Surge arranged, and the Carriers provided, transportation services for numerous shipments that resulting in the Carrier Fees evidenced by, among other things, **COMPOSITE EXHIBIT 2** to this Complaint.

39. Defendant Surge billed the respective Shippers for the Freight Charges evidenced in Exhibit 2.

40. Included in the Freight Charges the Shipper paid, or will pay, to Surge are the respective Carrier Fees collected for the benefit of the Carriers, as evidenced by Exhibit 2.

41. Having been induced by Surge, the Carriers placed their trust and confidence in Surge and the Carriers justifiably relied on Surge's express and implied promises to invoice, collect and timely forward to the Carriers the Carrier Fees (for the transportation services they had provided) upon receipt of those funds from the Shippers with respect to each shipment.

42. However, Surge did not transmit payment of the Carrier Fees to their respective owners (here, the Plaintiffs) upon receipt, as it was obligated to do.

43. The Carriers would not have entered into the Broker-Carrier Agreements nor provided their transportation services for the benefit of the Shippers and Surge had they known Surge did not intend to fulfil its oblations and duty to transmit the Carrier Fees its Surge's receipt of the same from the Shippers.

II. HOW THE PLAINTIFF'S OBTAINED THE RIGHTS OF THE CARRIERS

44. Plaintiffs are in the factoring business, which involves the purchase of Accounts from businesses. In factoring, the entity that purchases the Accounts is known as the "Factor." The Plaintiffs are Factors.

45. The entity from whom the Factor purchases the Accounts is the "Factoring Client." The Factoring Client's customer, who owes payments on the Account, is an "Account Debtor."

46. As a Factor, each Plaintiff advances funds to their Factoring Clients by purchasing certain of the Factoring Client's Accounts.

47. The Plaintiffs also take a security interest in the Factoring Client's assets (including but not limited to its Accounts and the proceeds thereof) to secure repayment of the Factoring Client's obligations.

48. To enforce collecting those Accounts, Plaintiffs provide a statutory notice of assignment to the Factoring Client's customers (i.e., its Account Debtors). The notice instructs the Account Debtors that the Factoring Client's Accounts have been assigned to Plaintiff for payment and that all obligations owed to the Factoring Client are to be paid directly to Plaintiff (including amounts owed on Accounts which the Factor has not purchased).

49. With respect to the Accounts that a Factor has purchased, once purchased, the Factoring Client does not retain any legal or equitable interest in the Account sold and, as such, all legal and equitable interests in the sold Accounts, including the exclusive right to receive payments made by the respective Account Debtors, vest solely with the Factor (here, the Plaintiffs).

50. As such, Plaintiffs "stand in the shoes" of the Carriers and thus obtained and maintain the right to claim, sue for, collect, and retain the Accounts (and the proceeds thereof) of the assignor Carriers as evidenced on the attached and incorporated Composite Exhibit 2.

### III.   TRIUMPH'S INVOLVEMENT AND THE BANKRUPTCY FILING

51. Triumph is a factoring company active in the transportation industry that provided pre-petition financial accommodations to Surge, as a broker.

52. Triumph asserts that, before the Petition Date, it factored certain receivables generated by Surge's brokerage services and claims a lien in Surge's other assets, including liens in Accounts that it did not purchase as part of its factoring activities.

53. As a factoring company active in the transportation industry, and as Surge's long time financier, Triumph knew or should have known that the invoices Surge issued to Shippers were comprised of both the Commission (which was Surge's receivable) and the Carrier Fee (which did not belong to Surge and was instead to be immediately transmitted to the respective Carrier upon Surge's receipt of the same from the Shipper).

54. Nevertheless, Surge purported to factor and encumber the entire amount of the Freight Charges knowing that Surge had intentionally breached its obligations and duties by not transmitting the Carrier Fees to their rightful owners (the Plaintiffs, as assignees of the Carriers).

55. After the Bankruptcy Case was filed, Triumph provided continuing factoring and financial accommodations to the Debtor pursuant to the Interim Order and DIP Order, and continued to

assert ownership and secured claims in, among other things, Carrier Fees that do not belong to Surge.

56.     Since the Bankruptcy Case was filed, the Defendants have been collecting payments from Shippers pursuant to the authorization of this Court and have used the Bankruptcy Case to preclude Carriers (and their assignees, like the Plaintiffs) from exercising their otherwise available collection rights.

57.     By so doing, during that time Surge has reduced its debt to Triumph by not less than Six Million Dollars.

58.     Surge, Triumph and/or their respective counsel are holding an excess of Six Million dollars from such collections of the Freight Charges.

59.     Most of the funds collected by Surge and/or Triumph during this period were derived from the payments made by Shippers to Surge for the Carrier Fees generated by the Carriers' provision of transportation services.

60.     The Defendants' actions have caused harm, and continue to cause increasing harm, to the Plaintiffs who are the rightful owners and assignees of the Carrier Fees.  The Defendants have been, and continue to be, unjustly enriched by failing to deliver the Carrier Fees to their rightful owners.

61.     Once collected or held by one or more of the Defendants, the Carrier Fees constitute the *res* of an express or, alternatively, implied trust for the benefit of the Carriers and/or Plaintiffs as assignees of the Carrier Fees (the "Trust Funds").

62.     At all times relevant hereto, Surge, acted as a trustee and agent who was obligated to invoice, collect, account for, and transmit the Carrier Fees to and for the benefit of the Plaintiffs (as assignees of the Carrier Fees) upon receipt.

63. In addition to its contractual obligations, in the ordinary course of Surge's business, as a matter of transportation industry protocol, and in its course of dealing with Plaintiffs and the relevant Carriers, Surge was similarly obligated to invoice, collect and transmit the Carrier Fee for the services that had been provided upon receipt of those payments from the Shippers.

64. As agreed to by Surge and the Carriers, as well as pursuant to motor carrier industry protocols, the parties' course of dealing, and practice and regulatory requirements governing the transportation industry, Surge served as merely a conduit entrusted by the Carriers and the Plaintiffs, who justifiably relied upon Surge to collect, hold in trust for their benefit, and timely pay over all Trust Funds that Surge collected from the Shippers for the freight transportation services that had been previously provided by Carriers.

65. Given the circumstances described in this Complaint, to the extent it has taken possession, control, or otherwise encumbered the Trust Funds, Triumph also acted (and continues to act) as a trustee and agent of the Carriers and the Plaintiffs (as assignees of the Carrier Fees).

66. Consistent with the agreements and course of dealing between the Carriers and Surge, Surge promised to pay for freight movements by the Carriers; the Carriers relied on the contracts, industry protocols, and the course of dealing between them and Surge; an agency relationship of trust and confidence existed between the Plaintiffs and Surge; and Surge and Triumph have been unjustly enriched by not paying or turning over the Carrier Fee portion of each Account when collected by Surge or Triumph.

67. The Defendants wrongfully appropriated the Trust Funds by failing to account for and properly transmit the Carrier Fees to their rightful owners, and by instead knowingly transferring some or all the Trust Funds to improper third parties, including primarily Defendant Triumph.

68. No Defendant holds any equitable interest in the Trust Funds.

69. Under the facts and circumstances pleaded herein, it would be inequitable for either of the Defendants to be allowed to enjoy a beneficial or other equitable or legal interest in such Trust Funds, and the Defendants would be unjustly enriched if they were to be permitted to continue to retain, use, or otherwise derive any benefit from the Trust Funds, and should be estopped from doing so.

70. The Defendants have failed and refused to remit the Trust Funds to the Plaintiffs.

71. The Defendants have failed refused to account for their collections of the Freight Charges, including the Commissions that Surge earned as a freight broker as well as the amount of the Carrier Fees belonging to the Carriers that constitute the Trust Funds in their possession.

72. The Defendants' continuing failure or refusal to remit the Trust Funds to Plaintiffs constitutes an unlawful breach of their fiduciary duties, contractual agreements, and other legal obligations.

73. The named Plaintiffs are the owners of the Trust Funds and are the equitable title holder to that property as beneficiaries of the trusts containing the Trust Funds, and such Plaintiffs are entitled to immediate payment of the Trust Funds free and clear of any and all liens, claims and encumbrances.

74. The DIP Order states that it did not adjudicate the ownership of any part of the pre-petition Freight Charges.

75. This Complaint is filed within 60 days following entry of the DIP Order.

76. All conditions precedent to the bringing of this action have occurred or been waived.

## COUNT I
## DECLARATORY JUDGMENT
### (The Carrier Fee Portion of Freight Charges are not Estate Property)

*Asserted Against All Defendants*

77. The allegations of all preceding paragraphs are incorporated herein by reference as if set forth herein.

78. An actual legal and substantial controversy exists as to whether (a) the Carrier Fees paid to Surge or Triumph by Shippers constitute "property of the estate" in this Bankruptcy Case, or (b) are instead excluded from property of the bankruptcy estate by operation of law.

79. This controversy if of sufficient immediacy and import to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202.

80. For the reasons set forth above, the Defendants have a mere possessory interest in the Carrier Fees. At most, the Defendants could hold only bare legal title of the Carrier Fees, with equitable title to the Trust Funds vested in the Plaintiffs.

81. Accordingly, and in either event, those funds are excluded from property of Surge's bankruptcy estate under 11 U.S.C. § 541(d) and applicable law.

82. Further, to the extent Triumph had, has or obtains possession of the Trust Funds, it holds such amounts in trust for the benefits of the Plaintiffs.

## COUNT 2
## UNJUST ENRICHMENT

*Asserted Against All Defendants*

83. The allegations of all preceding paragraphs are incorporated here and by reference as of set forth herein.

84.     The Defendants received Trust Funds representing payments to the Shippers for the valuable transportation services they had provided.  Defendants are not entitled to keep those Trust Funds, which instead belong to the Plaintiffs as the Carriers' assignees.

85.     The Defendants continue to improperly hold such Trust Funds.

86.     The Defendants owe Plaintiffs the full amount of the Trust Funds they collected from the Shippers.

87.     The Defendants would be unjustly enriched if they were to be allowed to keep the Trust Funds, particularly in that they knew the Trust Funds were not earned by Surge, nor the property of Surge, and instead belonged to the Plaintiffs.

88.     Surge promised to pay for freight movements by the Carriers; the Carriers relied on the contracts, protocols and course of dealing between them and Surge; a business and trust relationship existed between the Carriers and Surge; and Surge and Triumph have been unjustly enriched by not paying or turning over the Carrier Fee portion of each Account collected by Surge or Triumph from the Shippers.

89.     The Plaintiffs are entitled to recover the amount of such Trust Funds from the Defendants based upon the equitable doctrine of unjust enrichment as a result of failure to fulfil their fiduciary duties and obligations, and such other relief as may warranted.

## COUNT 3
## EQUITABLE LIEN

*Asserted Against Triumph*

90.     The allegations of all preceding paragraphs are incorporated here and by reference as of set forth herein.

91.     Surge's indebtedness to Triumph is purportedly secured by a security interest in, *inter alia*, all accounts receivable, but only to the extent Surge has an interest in the same.

92. Plaintiffs are informed and believe that at some point prior to the filing of the petition in bankruptcy by Surge, Triumph became aware of the precariousness of Surge's financial condition and knew, or should have known, that Surge would be unable to continue in business absent a merger with another entity or infusions of fresh capital which Triumph was unwilling to provide.

93. Plaintiffs are informed and believe that once Triumph became aware of Surge's financial condition, Triumph imposed various controls on Surge's business operations as a condition for extending further credit and/or forbearing default on Triumph's then-existing credit facility with Surge.

94. Plaintiffs are informed and believe that during the period that Surge was operating under Triumph's controls, only those operating expenses Triumph deemed necessary to keep the Debtor operating (and generating accounts receivable that would service Triumph's debt such as rent, payroll and utilities) were reviewed and approved by Triumph.

95. Plaintiffs are informed and believe that Triumph intended to continue Surge's operations for as long as possible in order to generate as much revenue as possible, much of which was used to reduce the debt owed to Triumph, without paying the third parties whose services generated that revenue.

96. Plaintiffs are informed and believe that having effectively shifted as much as possible of the debt owed to Triumph into unsecured debt owed to trade creditors, Triumph either intended that Surge would thereafter file a voluntary bankruptcy petition, and/or was indifferent to Surge's continuing existence and the resulting adverse impacts on other stakeholders of Surge.

97. The business activities conducted by Surge while operating under the controls imposed by Triumph included placing cargo for the shipment of goods with various motor carriers, including the Carriers who sold their Accounts to the Plaintiffs.

98. Plaintiffs are informed and believe that both Surge and Triumph intended that Freight Charges collected by Surge, which the Defendants knew included Carrier Fees belonging others, would be diverted to improperly reduce the debt Surge owed to Triumph.

99. Plaintiffs are informed and believe that such placement of cargos with the Carriers was done with actual or constructive knowledge by both Defendants that Surge would not pay the Carriers their Carrier Fees, and thus wrongfully induced the Carrier to provide their valuable transportation services.

100. Plaintiffs are informed and believe these activities continued up to, and after the Petition Date.

101. Such business activities constitutes inequitable conduct on the part of Triumph, especially with respect to inducing the Carriers to transported cargo at Surge's request after Triumph knew, or should have known, doing so would deepen Surge's financial distress to the detriment of all stakeholders, other than Triumph.

102. Because of Triumph's inequitable conduct with respect to the Carriers and their Accounts, Triumph should be estopped from asserting any rights or claims to the Carrier Fees in this matter.

103. To the extent Triumph is deemed to hold or have held the Trust Funds, Triumph's right, title and interest in them should be deemed subordinated to an equitable lien securing in favor of Plaintiffs in and to the Trust Funds, to the extent the Plaintiffs do not otherwise have legal remedy enabling recovery of the same.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered in their favor pursuant to 28 U.S.C. 2021 and 2022 declaring:

(1) Any Trust Funds paid to Surge or Triumph by Shippers are excluded from "property of the estate" in this Bankruptcy Case;

(2) that the Carriers or their assignees, the Plaintiffs, are sole owners of all right, title and interest to the respective Trust Funds;

(3) that all Trust Funds collected, or to be collected, by Surge and/or Triumph shall be segregated and held in trust for the benefit of the Plaintiffs;

(4) that Surge and Triumph shall provide an accounting of all Freight Charges, including the Commission and the Trust Funds

(5) The Plaintiffs individually or collectively, are permitted to take such collection actions as they deem necessary against parties (other than Surge, for which further order of this Court would be required), for recovery of the amount of the unpaid Carrier Fees;

**AND** further respectfully request the entry of a judgment in favor of Plaintiffs against Triumph (A) for unjust enrichment and requiring Triumph to abandon and turnover to Plaintiffs forthwith any Trust Funds that were or are in its possession or control; (B) subordinating the claims of Triumph to an equitable lien in favor the Plaintiffs with respect any other Trust Finds; (C) awarding costs, attorneys fees and interest to the Plaintiffs as appropriate, and (D) such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: September 22, 2023

                                                Respectfully submitted,

| | |
|---|---|
| David J. Jencks (admitted p*ro hac vice*)<br>**JENCKS LAW, P.C**.<br>121 North Egan<br>PO Box 442<br>Madison, SD 57042<br>Phone: 605.256.0121<br>Email: davidjencks@jenckslaw.com<br><br>Counsel for Plaintiffs | */s/ Chad S. Bowen*<br>Chad S. Bowen<br>Florida Bar No. 0138290<br>**BOWEN LAW GROUP**<br>P.O. Box 173442<br>Tampa Florida 33672<br>(T :) (813) 335-9782<br>(F :) (813) 489-4344<br>Email: chad@bowenLG.com<br><br>Local Counsel for Plaintiffs |